IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STEVEN BLAIR,<br><br>Plaintiff,<br><br>vs.<br><br>MARK MALOUSEK, Personal Representative of the Estate of Kenneth Blair, et al.,<br><br>Defendants. | 8:26-CV-567<br><br>MEMORANDUM AND ORDER |

This case involves the plaintiff's attempts to invoke the authority of this Court to undo the effect of judgments and orders entered by Nebraska state courts. This Court will decline the plaintiff's invitation and will, on its own motion, dismiss the plaintiff's complaint.

## I. BACKGROUND

The underlying dispute in this case involves three real properties in Omaha, Nebraska: One on Corby Street, one on Maple Street, and one on Florence Boulevard. *See* filing 4 at 2. *See* filing 7 at 2. The plaintiff, Steven Blair, avers that the properties were part of a business enterprise that involved himself and his now-deceased parents, Charlene and Kenneth Blair. *See* filing 7 at 1-2. Apparently, according to the plaintiff, the original personal representative of Charlene Blair—Kenneth—had listed the properties as assets jointly owned by Steven, Charlene, and Kenneth, but "[s]uccessor representatives and estate counsel later weaponized a selective and contradictory inventory amendment to bypass trial and strip Plaintiff of his equitable joint interests." Filing 4 at 2; *see also* filing 6 at 39-42. Later, after

Kenneth died intestate, Steven and the other heirs to Kenneth's estate disputed ownership of the property in the District Court for Douglas County, Nebraska. *See* filing 6 at 15-31.

The state court ruled against Steven. *See* filing 6 at 32-38. On June 4, 2026, the state court granted the motion for summary judgment filed by the personal representative of Kenneth's estate, quieting title to the properties in Kenneth's estate and rejecting Steven's claims to have been transferred the properties. Filing 6 at 32-38. Specifically, the court found that Steven's attempt to transfer the properties to his business by quitclaim deed the day after Kenneth died were ineffective because the power of attorney Steven had held terminated automatically upon Kenneth's death. Filing 6 at 33-34 (citing Neb. Rev. Stat. § 30-4010). And because the business's titles were void, so was Steven's subsequent attempt to transfer them to himself. Filing 6 at 34.

Accordingly, the state court quieted title to the properties in Kenneth's estate. Filing 6 at 37. On July 2, 2026, on the estate's motion, the state court issued an order *nunc pro tunc* adding the metes and bounds descriptions of the properties. Filing 6 at 44-47. Later, the defendants in the state court case (Steven, his wife, and his business) asked the court for a supersedeas bond. *See* filing 6 at 51-53. The court denied that request because the court had "entered judgment on July 2, 2026. More than 30 days have elapsed and Defendants are not entitled to the setting of a supersedeas bond." Filing 6 at 51-53 (citing Neb. Rev. Stat. § 25-1916). Steven and his business filed a separate case in state court and asked for a temporary restraining order and preliminary injunction, but that motion was denied on July 27. Filing 6 at 54.

Since then, Kenneth's estate has unsurprisingly been acting as if it owns the properties. Among other things, the personal representative of the estate sent a letter to Steven's wife, who apparently leases one of the properties,

instructing her to send her lease payments to the personal representative and advising her that her lease would not be extended or renewed. Filing 6 at 55. And another tenant of one of the properties was told to send his rent to the personal representative and given a 30-day notice of termination because the property was to be put on the market. Filing 6 at 56. On September 23, the County Court for Douglas County, in Kenneth's probate case, entered an order "giving the Personal Representive [sic] authority and full control of the real estate titled in Kenneth Blair's name." Filing 6 at 49. Steven apparently asked for a supersedeas bond but was "admonished on the record." Filing 6 at 49.

That apparently prompted this federal lawsuit. Steven is suing the personal representative of Kenneth's estate, the personal representative's lawyer, the district court judge who quieted title in the estate, the district court judge who denied Steven's state-court motion for injunctive relief, and the state court probate judge who is overseeing Kenneth's estate. *See* filing 4. Steven's operative complaint accuses the defendants of conspiring to violate his due process rights—specifically, to deprive him of "vested property, contractual, and co-partnership operational interests in the subject real estate and enterprise assets," filing 4 at 2—by exploiting, ignoring, and violating state law. *See* filing 4. As relief, Steven prays that the Court

> [d]eclare that Defendants' coordinated actions and procedural manipulations have violated Plaintiff's Fourteenth Amendment due process and contractual rights [and] [i]ssue appropriate prospective injunctive relief enjoining the enforcement of unadjudicated, non-final orders, stopping interference with Blair Properties leases . . . halting the enforcement of defective nunc pro tune decrees, and enjoining the administrative restriction of court access while federal and state matters are resolved . . . ."

Filing 4 at 3. This matter is before the Court now on Steven's motion for a temporary restraining order and preliminary injunction (filing 6) "enjoining Defendants . . . from enforcing the contested non-final orders, redirecting tenant rents, issuing lease terminations, seizing real estate property assets . . . or interfering with commercial lease operations . . . and Blair Properties operations . . . ." Filing 6 at 4.

## II. STANDARD OF REVIEW

When deciding whether to issue a temporary restraining order or a preliminary injunction, the Court weighs the four *Dataphase* factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability the movant will succeed on the merits; and (4) the public interest. *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1098 (8th Cir. 2013); (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety. *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### 1. Temporary Restraining Order Requirements

But while a temporary restraining order and preliminary injunction are weighed by the same substantive standards, there are additional procedural requirements for a temporary restraining order. It is well-established that a temporary restraining order is an emergency remedy which should only be issued in exceptional circumstances. *Zidon v. Pickrell*, 338 F. Supp. 2d 1093, 1094-95 (D.N.D. 2004). Specifically, the Court may issue a temporary

restraining order—that is, an order without written or oral notice to the adverse party or its attorney—only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; *and*
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1) (emphasis supplied). Steven made neither showing. He asserts that he will suffer irreparable injury in the absence of injunctive relief, filing 7 at 3, but does not explain the need for such relief *ex parte*. And the only thing Steven has said about notice is that a copy of his motion was served "via electronic delivery and/or U.S. Mail," which is hardly specific. Not to mention, Steven was aware as early as September 1 that the personal representative of Kenneth's estate was asserting control over the properties.

In other words, it's not clear whether the urgency of this situation, supposedly requiring *ex parte* relief, was truly outside the plaintiff's control. So, the plaintiff fails to meet his burden under Rule 65(b)(1)(B).

### 2. Likelihood of Success on the Merits

That said, the Court finds no likelihood that Steven will succeed on the merits of his claims—or even that the Court can reach the merits. In deciding whether to grant a preliminary injunction, likelihood of success on the merits is the most significant factor. *Laclede Gas Co. v. St. Charles Cnty.*, 713 F.3d 413, 419-20 (8th Cir. 2013). A party seeking injunctive relief need not necessarily show a greater than 50 percent likelihood that it will prevail on the

merits. *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731 (8th Cir. 2008). But the absence of a likelihood of success on the merits strongly suggests preliminary injunctive relief should be denied. *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013).

Here, the Court finds three separate and independent bars to Steven's claims being asserted in federal court: The *Rooker-Feldman* doctrine, the *Younger* abstention doctrine, and the federal probate exception.

*(a) Rooker-Feldman*

The *Rooker-Feldman* doctrine prohibits lower federal courts from exercising appellate review of state court judgments. *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). The *Rooker-Feldman* doctrine generally applies where a case is brought by the losing party in a state court action, complaining of injuries caused by the state court's judgment rendered before the district court proceedings commenced, and inviting the district court to review and reject that judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Ultimately, "no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002) (cleaned up).

*Rooker-Feldman* is, however, a narrow doctrine that does not extend to a case merely "because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon*, 544 U.S. at 293. Only where the alleged injury for which a plaintiff seeks redress stems directly from the state court judgment itself, rather than from some separate injury caused by the defendant, does the federal court have no jurisdiction to review. *Skit Intern., Ltd. v. DAC Techs. of Ark., Inc.*, 487 F.3d 1154, 1157 (8th Cir. 2007). Therefore,

the crucial inquiry in determining if a claim is so inextricably intertwined with a state judgment that it cannot be heard by a federal court has been explained as hinging upon "whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Brokaw*, 305 F.3d at 664-65 (citation omitted).

*Rooker-Feldman* may be a narrow doctrine, but it applies here. Steven's motion is, quite specifically, directed at undoing a state court judgment rendered against him: His operative complaint expressly prays for this Court to enjoin enforcement of the state courts' orders and decrees. Filing 4 at 3. Aside from declaratory relief that his constitutional rights were violated, he doesn't ask for anything else (such as money damages, for instance). *See* filing 4 at 3. It's entirely apparent that all of Steven's alleged injuries flow from a state court judgment. As such, the U.S. Supreme Court is the only federal court with jurisdiction to review it.

(b) *Younger* Abstention

For related reasons, abstention pursuant to *Younger v. Harris* is appropriate. 401 U.S. 37, 43-44 (1971). Because *Rooker-Feldman* applies to final state court judgments, while *Younger* applies to pending state judicial proceedings, it is a rare case in which both doctrines will be applicable. But this is such a case, because Steven is attacking both the state district court's quiet title judgment (which is final) and the state county court's probate administration (which is not).

Determining whether *Younger* abstention is appropriate requires a three-part inquiry. *375 Slane Chapel Rd., LLC v. Stone Cnty., Mo.*, 53 F.4th 1122, 1127 (8th Cir. 2022).

- First, whether the underlying state proceeding falls within one of the three "exceptional circumstances" where *Younger* abstention is appropriate: State criminal prosecutions, civil enforcement proceedings akin to criminal prosecution in important respects, and civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions. *See id.* at 1126-27 (citing *Sprint Commc'ns v. Jacobs*, 571 U.S. 69 (2013)).
- Second, whether the state proceeding satisfies what are known as the "*Middlesex*" factors: Whether the action complained of is an ongoing state judicial proceeding, whether the proceeding implicates important state interests, and whether there is an adequate opportunity in the state proceeding to raise the federal issues. *See id.* (citing *Middlesex v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)).
- And third, even if the underlying state proceeding satisfies the first two inquiries, whether abstention is nevertheless inappropriate because an exception to abstention applies? *Id.*

At issue here is the third "exceptional circumstance": A civil proceeding involving certain orders uniquely in furtherance of the state court's ability to perform their judicial functions, such as contempt proceedings. *See id.* at 1127.

The Court recognizes that such circumstances are narrowly constrained to orders "at the core of the administration of the State's judicial system," implicating the "processes by which the State compels compliance with the judgments of its courts." *See Covington v. Humphries*, No. 24-1158, 2025 WL 1448661, at *5 (10th Cir. May 19, 2025) (citing *Juidice v. Vail*, 430 U.S. 327 (1977); *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987)); *see also Cavanaugh v. Geballe*, 28 F.4th 428, 435 (2d Cir. 2022). But those circumstances are present here because of the relationship between the state district court and state

probate court. The state district court quieted title to real property, and the state probate court is enforcing the estate's authority to exercise that title. Steven is essentially trying to put the county court in a bind by confronting it with conflicting and irreconcilable orders from other courts.

Steven's attempt to put the probate court in that untenable position directly implicates the process by which Nebraska courts compel compliance with their judgments. Steven was admonished on the record for precisely the sort of delaying tactics that he's now pursuing in this Court. *See* filing 6 at 49. What he's doing, in effect, is asking Dad for something that Mom already refused. Any parent knows the right answer to that question.

The *Middlesex* factors also suggest abstention. There is an ongoing state proceeding, the administration of estate assets and title to Nebraska real property implicates important state interests, and Steven's allegations that state court judges misapplied state law can be addressed through the ordinary processes of Nebraska state courts. Nor is there anything to suggest that an exception to *Younger*, such as bad faith or harassment, is applicable here. *See Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1254 (8th Cir. 2012). Accordingly, this Court should abstain from interfering with the state county court's authority to give effect to the state district court's judgment.

(c) Probate Exception

Finally, the Supreme Court has recognized a "probate exception," kin to the domestic relations exception, to otherwise proper federal jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). The probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate. *Id*. at 311. It also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate

court. *Id*. at 311-12. But it doesn't bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction. *Id*. at 312.[1]

The probate exception couldn't be more squarely implicated here: Steven is expressly asking the Court to control the disposition of real property that is part of the decedent's estate. Steven is dissatisfied with the probate court's administration of estate assets and wants this Court to effectively dispose of those assets differently, based on his claims that state law has been improperly applied. *See* filing 4. That, the Court cannot do.

### 3. REMAINING *DATAPHASE* FACTORS

For the sake of completeness, the Court addresses the remaining *Dataphase* factors. Steven has admittedly shown some threat of irreparable harm, given the possibility that the personal representative will alter or terminate leasehold interests. That potential harm is balanced by potential harm to the other heirs of Kenneth's estate, as the relief Steven requests would prevent Kenneth's estate from controlling property that the state courts said the estate owns. And the public interest is not served by federal interference in state court proceedings. But in the absence of any likelihood of success on the merits, there is no basis for injunctive relief.

---

[1] The Court recognizes a difference of opinion regarding the applicability of the probate exception in federal question cases, as opposed to diversity jurisdiction. *See Jones v. Brennan*, 465 F.3d 304, 306 (7th Cir. 2006) (collecting cases). The Court agrees with the Seventh Circuit that the identical underlying statutory language of the Judiciary Act of 1789 (conferring diversity jurisdiction) and the Judiciary Act of 1875 (conferring general federal-question jurisdiction) should be given the same effect. *See id*. at 306-08 (collecting cases).

## III. CONCLUSION

For the foregoing reasons, the Court will deny Steven's motion for a preliminary injunctive relief. For the same reasons, the Court will also dismiss Steven's complaint, based on lack of subject-matter jurisdiction, and prudential abstention from interfering with state court proceedings. It is appropriate to do so *sua sponte* because, as noted above, *Rooker-Feldman* is jurisdictional. *Johnson v. City of Shorewood, Minn.*, 360 F.3d 810, 818 (8th Cir. 2004). It is also appropriate because the concerns underlying federal abstention counsel in favor of minimizing any potential impact on the ongoing state cases. *See Ashford v. Off. for Couns. for Discipline*, No. 8:19-CV-243, 2019 WL 2371662, at *1 (D. Neb. June 5, 2019), *aff'd,* 805 F. App'x 446 (8th Cir. 2020) (citing *Robinson v. City of Omaha*, 866 F.2d 1042, 1043 (8th Cir. 1989); *Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 676 (8th Cir. 2013). Accordingly,

IT IS ORDERED:

1. The plaintiff's motion for a temporary restraining order and preliminary injunction (filing 6) is denied.

2. The plaintiff's complaint is dismissed without prejudice.

3. A separate judgment will be entered.

Dated this 6th day of October, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge